**WO**                                                                             JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DaJuan Torrell Williams,<br><br>               Plaintiff,<br><br>v.<br><br>Unknown Alvarez, et al.,<br><br>               Defendants. | CV-22-00154-PHX-MTL (CDB)<br>CV-22-01118-PHX-MTL (CDB)<br>CV-22-01120-PHX-MTL (CDB)<br>CV-22-01163-PHX-MTL (CDB)<br><br>**ORDER** |

Before the Court are Defendants' Supplemental Motion for Summary Judgment (Doc. 162), Defendants' Motion for Clarification and Reconsideration (Doc. 178), and Defendant Acosta's Motion for Entry of Judgment (Doc. 187).

**I.    Procedural History**

Plaintiff DaJuan Torrell Williams, who is currently confined in the Arizona State Prison Complex-Eyman, brought four civil rights actions pursuant to 42 U.S.C. § 1983. On June 13, 2023, the Court consolidated the cases pertaining to Plaintiff's incarceration at the Yuma County Detention Center.[1]

On October 10, 2023, Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's Eighth Amendment conditions-of-confinement, excessive force, and medical care claims; First Amendment claims regarding his mail; Sixth Amendment claim regarding access to counsel; and Fourth Amendment unreasonable search claim. (Doc.

---

[1] Defendants refer to Plaintiff's cases in the order they were filed as *Williams #1*, *Williams #2*, etc. The Court will do the same.

127.) Defendant Acosta separately moved for summary judgment on the merits of Plaintiff's Eighth Amendment medical care claim. (Doc. 120.)

In a September 27, 2024 Order, the Court granted Defendant Acosta's Motion for Summary Judgment. (Doc. 175.) The Court also granted Defendants' October 10, 2023 Motion for Summary Judgment in part and denied it in part. (*Id.*) As relevant here, as to *Williams #3*, the Court granted the Motion with respect to the official-capacity claims in Counts Six and Seven and with respect to Defendants Yuma County and Rangel.[2] (*Id.*; Doc. 177.)[3]

On May 20, 2024, Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's First Amendment mail claims in Counts Six and Seven in *Williams #3*, which this Order addresses. (Doc. 162.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc). (Doc. 164.) Plaintiff failed to file a timely response. On July 11, 2024, Plaintiff filed a Motion for Excusable Neglect and sought, among other relief, leave to file his untimely, "partial" controverting statement of facts. (Doc. 169.) Plaintiff simultaneously lodged a Controverting Statement of Facts. (Doc. 170.) In a July 12, 2024 Order, the Magistrate Judge granted the Motion only to the extent that Plaintiff sought leave to file a statement of facts in opposition to Defendants' Motion for Summary Judgment and directed the Clerk of Court to docket the Controverting Statement of Facts. (Doc. 171.) On August 19, 2024, Defendants filed a Reply. (Doc. 174.)

. . . .

---

[2] In the September 27, 2024 Order, the Court incorrectly stated that Defendant Vargas, rather than Defendant Rangel, was dismissed as to *Williams #3*. The Court issued an Amended Order dismissing Defendant Rangel on October 1, 2024. (Doc. 177.)

[3] In *Williams #1*, the remaining claim is the portion of the Eighth Amendment claim in Count Four pertaining to outdoor recreation against Defendant Cooper; there are no remaining claims in Williams *#2*; in *Williams #4*, the remaining claim is the Eighth Amendment excessive force claim in Count Four against Defendant Arriola with respect to the November 8, 2021 incident.

## II. Defendants' Motion for Clarification

Defendants seek clarification and reconsideration of the September 27, 2024 Order insofar as the Order states that the claim in Count Seven in *Williams #3* remains against Defendants Wilmot, Milner, Cooper, Duarte, Gomez, Guerrero, and Oberosler in their individual capacities. (Doc. 178 at 1.) Defendants note that in the Screening Order in *Williams #3*, the Court ordered Yuma County and Defendants Wilmot, Milner, Cooper, Duarte, Gomez, Guerrero, and Oberosler to answer Count Seven in their official capacities only, and because the Court dismissed the official-capacity claims in the September 27, 2024 Order, there are no claims or Defendants remaining in Count Seven. (*Id.* at 2-4.)

Defendants are correct. The Court will grant the request for clarification and will dismiss Count Seven in *Williams #3* with prejudice. The Court will also dismiss Defendants Wilmot, Milner, Cooper, Duarte, Gomez, Guerrero, and Oberosler from *Williams #3* with prejudice.

## III. Defendant Acosta's Motion for Entry of Judgment

In her Motion, Defendant Acosta notes that although the Court granted her Motion for Summary Judgment, the Court did not enter judgment in her favor. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court determines there is no just reason for delay." Fed. R. Civ. P. 54(b). Rule 54(b) "was adopted 'specifically to avoid the possible injustice of delay[ing] judgment o[n] a distinctly separate claim [pending] adjudication of the entire case . . . . The Rule thus aimed to augment, not diminish, appeal opportunity.'" *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (omission in original)).

The Court finds no reason for delay and will grant Defendant Acosta's Motion and will direct the Clerk of Court to enter Judgment as to Defendant Acosta in *Williams #1*.

The Court notes that it also dismissed all the remaining claims in *Williams #2*, CV

22-01118, but did not direct entry of judgment as to that matter. The Court will likewise direct the Clerk of Court to enter Judgment as to CV 22-01118.

**IV.   Defendants' Motion for Summary Judgment as to Count Six in *Williams #3*[4]**

    **A.   Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw

---

[4] Because the Court already dismissed Count Seven, it need not address Defendants' arguments regarding Count Seven in this Order.

- 4 -

all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B.     Facts

It is the Yuma County Detention Center's (YCDC's) policy to prohibit sexually explicit material from entering the facility. (County Defendants' Statement of Facts (CDSOF), Doc. 128 at 24 ¶ 134.) Specifically, images that show the anus, nipple, vagina, penis, or depict individuals engaged in sexual acts, are considered sexually explicit and are prohibited. (*Id.*) YCDC refers to this material as "sexually explicit," "sexually offensive," and "sexually orientated." (*Id.*) These terms are used interchangeably to describe material that contains images of the actions/body parts described above. (*Id.*) Such material is prohibited to reduce sexual harassment, prevent a hostile environment, and ensure rehabilitation of the inmate population. (*Id.* ¶ 135.) The policy does not prohibit sexually explicit letters, books, magazines, articles, or photographs if they do not show the images described above. (*Id.* ¶ 148.) Inmates are not prohibited from discussing sexual topics telephonically or during visitation. (*Id.*)

Uniformed YCSO officers review incoming and determine whether to withhold an inmate's mail due to sexually explicit material. (Defs.' Supplemental Statement of Facts (DSSOF), Doc. 163 at 2 ¶ 6.) If sexually explicit materials are received for an inmate at the facility, an unauthorized property slip is provided to the inmate noting that the items were withheld due to their sexually offensive nature. (CDSOF ¶ 136.) Any withheld item is placed in the inmate's property box and returned to the inmate upon his release from YCDC. (*Id.* ¶ 137.)

CNA Entertainment is a "mail order LLC that caters solely to customers housed in local, state & federal correctional institutions." (*Id.* ¶ 139.) CNA sells sexual images to inmates. (*Id.*) Inmates can order individual 4 x 6 images, or a 100-image "grab bag" (or catalog) that contains multiple smaller images on each page. (*Id.*) YCDC does not prohibit all images received for inmates by CNA, or any other vendor, but prohibits any items that contain images of the body parts or actions described above. (*Id.* ¶ 140.) Such

determinations are made on an individualized basis for each image received from CNA or any other vendor. (*Id.*)

Plaintiff received numerous photographs from CNA throughout his incarceration at YCDC. (*Id.* ¶ 141.) Often, the CNA images Plaintiff received were not from CNA directly but were mailed to him from other individuals. (*Id.*)

On March 12, 2021, Plaintiff received 65 non-nude photograph catalogs and 25 non-nude photographs from CNA Entertainment. (Doc. 6 at 19.) Defendant Quiroz signed the unauthorized property slip for these items on July 21, 2021. (*Id.*)

Defendant Quiroz is not a uniformed YCSO officer. (*Id.* ¶ 7.) Defendant Quiroz was not involved with reviewing inmate mail at the facility, she was not involved with reviewing the 65 photo catalogs and 25 non-nude photographs from CNA that Plaintiff received on March 12, 2021, and she did not make the decision to withhold these items. (*Id.* ¶ 8.) The YCSO officer who reviewed these items and decided to withhold them as to the sexually explicit material should have issued an unauthorized property slip to Plaintiff notifying him that the material was withheld. (*Id.* ¶ 9.)

On June 17, 2021, Plaintiff received a graphic novel that was withheld. (*Id.*) Officer Arviso reviewed the graphic novel that was withheld on June 17, 2021, determined that there were pages containing pictures of nude content, and agreed with Defendant Espinoza's supervisors' decision to withhold it. (DSSOF ¶ 18.) Defendant Espinoza signed the unauthorized property slip on June 18, 2021. (Doc. 6 at 19.)

On January 25, 2022, Plaintiff received two graphic novels that were withheld as "not authorized due to nudity." (*Id.* at 20.) Defendant Espinoza signed the unauthorized property receipt on January 27, 2022. (*Id.*) Because Plaintiff was released from YCDC custody on February 3, 2022, YCDC no longer possesses the images or the graphic novels that were withheld. (DSSOF ¶ 5.)

Defendant Espinoza's responsibilities as a Detention Support Specialist in the Programs Office included reviewing books that prisoners receive for prohibited materials or content. (*Id.* ¶ 14.) If she believes a book is prohibited, she provides it to the Program's

Supervisor to decide whether it should be withheld. (*Id.*) If the Programs Supervisor decides that a book should be withheld because it contains unauthorized content, the prisoner is issued an unauthorized property slip. (*Id.* ¶ 15.) Defendant Espinoza did not have the authority to decide to withhold books for unauthorized content. (*Id.* ¶ 16.)

### C.    First Amendment Legal Standard

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Prisoners enjoy a First Amendment right to send and receive mail, *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995), but inmates' First Amendment rights are "necessarily limited by the fact of incarceration and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security," *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987).

A regulation that impinges on a prisoner's First Amendment rights is valid if it "is reasonably related to legitimate penological interests." *Frost v. Symington*, 197 F.3d 348, 354 (9th Cir. 1999) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a regulation or restriction is reasonably related to legitimate penological interests, courts apply the test established in *Turner*, which considers four factors: (1) whether there is a valid, rational connection between the restriction and the legitimate governmental interest it is designed to protect; (2) whether the prisoner has alternative means of exercising the right at issue; (3) the impact any accommodation would have on guards, other inmates, and allocation of prison resources; and (4) whether there are "ready alternatives" for furthering the government interest, which would suggest that the restriction is an exaggerated response to the prison's concern. *Turner*, 482 U.S. at 89-90. Courts must give "substantial deference to the professional judgment of prison administrators." *Beard v. Bank*, 548 U.S. 521, 528 (2006) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The Supreme Court in *Turner* recognized that "[p]rison administration is ... a task that has been committed to the responsibility of [the legislative and executive branches], and separation of powers concerns counsel a policy of judicial restraint." 482 U.S. at 85. "Where a state penal system is involved, federal courts have … an additional reason to accord deference

to the appropriate prison authorities." *Id.* In the Supreme Court's view, "such a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Id.*

The Supreme Court has recognized that there are greater security concerns for incoming mail than for outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Publishers have a First Amendment right to communicate with inmates by mail, and inmates have a First Amendment right to receive this mail. *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005)). "But this right is subject to 'substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security.'" *Id.* (quoting *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990)).

**D. Analysis**

**1. Plaintiff's Failure to Respond**

The Court first addresses Defendants' contention that by failing to properly respond to Defendants' Supplemental Motion for Summary Judgment, Plaintiff has "conceded all arguments" in the Motion. (Doc. 174 at 3.) A lack of any response to a summary judgment motion is not a basis to grant the motion. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (if a summary judgment motion is unopposed, Rule 56 authorizes the court to consider a properly supported fact as undisputed, but it does not permit the court to grant summary judgment by default). Accordingly, to the extent that Defendants ask the Court to grant summary judgment in their favor based solely on Plaintiff's failure to file a proper response, that request is denied.

**2. Nature of Withheld Material**

The Court notes that, to the extent Plaintiff contends the withheld material was not sexually explicit within the meaning of YCDC's policy, he has failed to submit any evidence about the content of the withheld material or any description of it to contest Defendants' evidence. The Court will therefore defer to Defendants' judgment that the withheld material falls within the purview of the policy prohibiting sexually explicit

1  material. *See Bahrampour v. Holland*, 356 F.3d 969, 973 (9th Cir. 2004) ("Bahrampour has produced insufficient evidence to show that viewing the evidence in the light most favorable to him, any reasonable person would conclude that White Dwarf magazine contains no role-playing or fantasy content, or that Muscle Elegance magazine contains no sexually explicit material.") (citing *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (holding that "a mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint. Summary judgment may be granted if the evidence is merely colorable ... or is not significantly probative")).

### 3.     Personal Involvement

Defendants argue that Defendants Quiroz and Espinoza were not personally involved in the decision to withhold the materials. (Doc. 162 at 5-6.) In her Declaration, Defendant Quiroz avers that she was not involved with reviewing inmate mail at YCDC and was not involved with reviewing the 65 photo catalogs and 25 non-nude photographs from CNA that Plaintiff received on March 12, 2021. (Decl. of V. Quiroz, Doc. 163-1 at 4 ¶ 11.) Likewise, Defendant Espinoza avers that she had no authority to withhold books based on unauthorized content and that her supervisor made all decisions regarding whether a book should be withheld as unauthorized. (Decl. of G. Espinoza, Doc. 163-2 at 4 ¶ 13.) Defendant Espinoza declares that Officer Arviso reviewed the graphic novel that was withheld on June 17, 2021 and agreed with Defendant Espinoza's supervisors' decision to withhold it. (*Id.* ¶ 14.) However, both Defendant Quiroz and Defendant Espinoza signed unauthorized property slips with respect to the withheld material, and there is therefore some evidence of their personal involvement in the decision to withhold the material. On this record, there is a dispute of fact regarding whether Defendants Quiroz and Espinoza were personally involved in the decisions to withhold Plaintiff's mail.

. . . .

. . . .

### 4. Application of *Turner*

#### a. Rational Connection to Legitimate Governmental Interest

In determining whether withholding the material violated Plaintiff's First Amendment rights, the Court must determine whether the governmental objective underlying YCDC's policy of excluding sexually explicit images is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective. *Thornburgh*, 490 U.S. at 414. "In the prison context, regulations that apply to specific types of content due to specific inherent risks or harms are considered content neutral." *Bahrampour*, 356 F.3d at 975.

YCDC has a legitimate governmental interest in reducing sexual harassment, preventing a hostile environment for inmates and staff, facilitating rehabilitation and treatment objectives, and promoting the safe, secure, and orderly operation of the facility. The policy of excluding sexually explicit images is rationally related to those legitimate penological goals. *See Prison Legal News*, 39 F.4th at 1132 ("[I]t is rational for prison officials to restrict sexually explicit materials to mitigate prison violence and advance related interests."). Moreover, the policy is neutral on its face—there is nothing to indicate that the aim of the policy is to suppress expression. *Thornburgh*, 490 U.S. at 415-16 ("the regulation or practice in question must further an important or substantial government interest unrelated to the suppression of expression"). The first *Turner* factor is satisfied.

#### b. Alternative Means of Exercising Right

The second *Turner* factor considers "whether there are alternative means of exercising the right that remain open to prison inmates." 482 U.S. at 90. "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Bahrampour*, 356 F.3d at 975. When analyzing the second *Turner* factor, the Court must view the right in question "sensibly and expansively." *Thornburgh*, 490 U.S. at 417 (citation omitted).

Defendants have produced evidence that YCDC does not prohibit all access to

sexually explicit material. Specifically, YCDC's policy does not prohibit sexually explicit letters, books, magazines, articles, or photographs if they do not show the types of images described above, and inmates are not prohibited from discussing sexual topics telephonically or during visitation. Plaintiff therefore had alternative means of exercising his asserted right. *See Thornburgh*, 490 U.S. at 401 (where regulation bans sexually explicit material that threatens institutional security, alternative avenues are available where "the regulations [at issue] permit a broad range of publications to be sent, received, and read"). Plaintiff has failed to present any argument or evidence to rebut Defendants' evidence. The second *Turner* factor is satisfied.

### c. Adverse Impacts of Accommodation

Third, the Court must consider the impact on the prison if inmates were permitted to have sexually explicit materials. *See Turner*, 482 U.S. at 90. "If accommodations for a constitutional right would cause significant changes within the prison environment, the courts should give deference to the prison officials who are responsible for safe, effective, and efficient administration of the prison system." *Bahrampour*, 356 F.3d at 975.

Defendants argue that permitting the images "would have a profound impact o[n] rehabilitation efforts for Plaintiff and other inmates (particularly, sexual offenders)." (Doc. 162 at 6.) Defendants contend sexually explicit images are prohibited "to prevent a hostile environment among the inmates and staff," which they assert is "especially important here given Plaintiff's history of assaulting staff." (*Id.* at 7.) Plaintiff has failed to present any argument or evidence to rebut Defendants' assertion. The third *Turner* factor is satisfied.

### d. Obvious Alternatives/Exaggerated Response

Finally, the Court examines whether the policy at issue is an exaggerated response to the facility's concerns. *Turner*, 482 U.S. at 90. On this prong, Plaintiff bears the burden of showing that there are obvious, easy alternatives to the regulation. *Mauro v. Arpaio*, 188 F.3d 1054, 1062 (9th Cir. 1999). If Plaintiff can identify an alternative that fully accommodates the right at a de minimis cost to valid penological goals, the policy is an exaggerated response. *Turner*, 482 U.S. at 90-91. "If there are no obvious alternatives,

1 and if the inmate only presents solutions that will negatively impact valid penological
2 interests, then courts will view the absence of ready alternatives as evidence of a reasonable
3 regulation." *Bahrampour*, 356 F.3d at 976.

4 Defendants argue that there is no evidence of any reasonable alternative to the
5 restrictions because the images cannot be made available only to certain inmates or viewed
6 in a separate section of the facility. (*Id.*) Defendants contend there are "no obvious and
7 easy alternatives that would allow Plaintiff" to obtain sexually explicit images because they
8 are "prohibited by the YCDC policy for legitimate penological reasons." (*Id.*) As noted,
9 Plaintiff bears the burden of showing that there are obvious, easy alternatives to the
10 regulation. *Mauro*, 188 F.3d at 1062. Plaintiff has presented no alternative to YCDC's
11 policy and therefore has failed to meet his burden. The fourth *Turner* factor is satisfied.

### 5. Conclusion

13 On this record, the facts show that YCDC's policy is based on the legitimate
14 penological goals of rehabilitation and maintaining security and that allowing Plaintiff to
15 possess sexually explicit images would be counterproductive to these goals. Accordingly,
16 even if Defendants Quiroz and Espinoza withheld Plaintiff's mail pursuant to YCDC's
17 policy, their decision did not violate Plaintiff's First Amendment rights. The Court will
18 therefore grant Defendants' Motion for Summary Judgment as to Count Six.

19 **IT IS ORDERED:**

20 (1) The reference to the Magistrate Judge is **withdrawn** as to Defendants'
21 Supplemental Motion for Summary Judgment (Doc. 162), Defendants' Motion for
22 Clarification and Reconsideration (Doc. 178), and Defendant Acosta's Motion for Entry of
23 Judgment (Doc. 187).

24 (2) Defendants' Motion Supplemental for Summary Judgment (Doc. 162) and
25 Motion for Clarification and Reconsideration (Doc. 178) are **granted**.

26 (3) **In CV-22-01120**: Counts Six and Seven and Defendants Espinoza, Quiroz,
27 Wilmot, Milner, Cooper, Duarte, Gomez, Guerrero, and Oberosler are **dismissed with**
28 **prejudice**. **There are no remaining claims in CV-22-01120**.

(4) The Clerk of Court **must enter Judgment** and **close** CV-22-01120.

(5) The Clerk of Court **must enter Judgment** and **close** CV-22-01118.

(6) Defendant Acosta's Motion for Entry of Judgment (Doc. 187) is **granted**. The Clerk of Court **must enter Judgment** as to Defendant Acosta in CV-22-00154.

(7) In *Williams #1* (CV-22-00154), the remaining claim is the portion of the Eighth Amendment claim in Count Four pertaining to outdoor recreation against Defendant Cooper and in *Williams #4* (CV-22-01163), the remaining claim is the Eighth Amendment excessive force claim in Count Four against Defendant Arriola with respect to the November 8, 2021 incident.

Dated this 8th day of November, 2024.

Michael T. Liburdi
United States District Judge