WO
JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DaJuan Torrell Williams,<br><br>  Plaintiff,<br><br>v.<br><br>Unknown Alvarez, et al.,<br><br>  Defendants. | CV-22-00154-PHX-MTL (CDB)<br>CV-22-01118-PHX-MTL (CDB)<br>CV-22-01120-PHX-MTL (CDB)<br>CV-22-01163-PHX-MTL (CDB)<br><br>**ORDER** |

Before the Court is Defendant Michael Cooper's Motion for Summary Judgment on qualified immunity grounds with respect to Plaintiff's Eighth Amendment claim regarding outdoor recreation. (Doc. 182.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 184), and he did not file a response. The Court will grant in part and deny in part Defendant Cooper's Motion for Summary Judgment.

**I.  Procedural History**

Plaintiff brought four civil rights actions pursuant to 42 U.S.C. § 1983. On June 13, 2023, the Court consolidated the cases pertaining to Plaintiff's incarceration at the Yuma County Detention Center ("YCDC").[1]

On October 10, 2023, the Yuma County Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's Eighth Amendment conditions-of-confinement,

---

[1] The Court refers to Plaintiff's cases in the order they were filed as *Williams #1*, *Williams #2*, etc.

excessive force, and medical care claims; First Amendment mail claims; Sixth Amendment access-to-counsel claim; and Fourth Amendment unreasonable search claim. (Doc. 127.) Defendant Acosta separately moved for summary judgment on the merits of Plaintiff's Eighth Amendment medical care claim. (Doc. 120.) In a September 27, 2024 Order, the Court granted Defendant Acosta's Motion for Summary Judgment. (Doc. 175.) The Court also granted Defendants' October 10, 2023 Motion for Summary Judgment in part and denied it in part. (*Id.*) The Court denied the Motion as to Plaintiff's Eighth Amendment claim in *Williams #1* regarding outdoor recreation against Defendant Cooper and his Eighth Amendment excessive force claim in *Williams #4* against Defendant Arriola. The Court gave Defendants Cooper and Arriola 14 days to file a renewed Motion for Summary Judgment limited to the issue of whether they are entitled to qualified immunity. (*Id.*) Defendant Cooper filed his Renewed Motion for Summary Judgment on October 25, 2024. (Doc. 182.) Defendant Arriola did not file a Renewed Motion.

Defendants then filed a Supplemental Motion for Summary Judgment (Doc. 162) and a Motion for Clarification and Reconsideration (Doc. 178). Defendant Acosta filed a Motion for Entry of Judgment. (Doc. 187.) In a November 13, 2024 Order, the Court granted the Supplemental Motion and the Motion for Clarification. (Doc. 191.) With respect to *Williams #3*, the Court dismissed the remaining claims and Defendants and directed the Clerk of Court to enter judgment and close the case. (*Id.* at 13.) The Court also directed the Clerk of Court to enter judgment and close *Williams #2* because there were no remaining claims or Defendants and directed the Clerk to enter judgment as to Defendant Acosta in CV-22-00154. (*Id.*)

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate

the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Defendant Cooper**

In *Williams #1*, Plaintiff alleges Defendant Cooper placed him on "zero item status" for several months, in violation of his Eighth Amendment rights. (Doc. 17 at 8-22.) On screening, as relevant here, the Court determined that Plaintiff had stated an Eighth Amendment conditions-of-confinement claim in Count Four against Defendant Cooper for his alleged authorization of Plaintiff's placement on "zero item status." (Doc. 19 at 13.)

**A.  Facts**[2]

Plainitiff has been in the custody of the Arizona Department of Corrections,

---

[2] Because Plaintiff did not file a response or controverting statement of facts, the

- 3 -

Rehabilitation and Reentry ("ADCRR") since 1999. On March 10, 2020, Plaintiff was transferred from ADCRR to the YCDC to await trial on new charges.

Plaintiff alleges that between June 26 and September 15, 2020, he was placed "or maintained on" "zero item status." (Doc. 17 at 16-17.) Among other things, while Plaintiff was on zero item status, he was not given any outdoor recreation or exercise for more than 120 days. (*Id.* at 18-19.)

YCDC does not have a "zero item status" policy. (County Defendants' Statement of Facts ("CDSOF"), Doc. 128 at ¶ 238.) Inmates housed in Special Management Unit F Housing Unit are classified as high-risk inmates who have documented institutional violence (either at YCDC or other facilities), inmates with behavioral problems who demonstrate violent behavior, and inmates who have assaultive behaviors toward staff or other inmates. (*Id.* at ¶ 214.) These inmates can be housed in either the F1 or F2 units. (*Id.*) F1 is YCDC's most restrictive unit and houses inmates who have a history of disruptive and aggressive behavior towards staff. (*Id.*)

Plaintiff arrived at YCDC on April 17, 2020 and was classified and housed in F1. (*Id.* at ¶ 233.) Based on Plaintiff's ADCRR Maximum Security classification, previous assaults on staff and other prisoners at ADCRR, and life sentence, Plaintiff did not qualify to be housed in general population at YCDC. (*Id.*) Plaintiff was housed in F1 for most of his time at YCDC. (*Id.* at ¶¶ 233-36.)

Upon request, and absent other circumstances like disciplinary, classification, or individualized safety/security concerns, F1 inmates were afforded 30 minutes of recreation, once a week. (Def.'s Statement of Facts (DSOF), Doc. 183 at ¶ 14.) F1 inmates were required to ask one of the officers in the housing unit for recreation if they wanted to participate. (*Id.*) The special recreation yard is the recreation yard utilized by F1 inmates. (*Id.*) It is fully enclosed, with an open top, and a table inside. (*Id.* at ¶ 15.) Due to safety

---

Court will consider Defendants' supported facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified Complaint or other evidence on the record. Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

and security concerns, including possible violence toward other inmates, only one inmate is allowed on the special recreation yard at a time. (*Id.* at ¶ 16.)

On June 26, 2020, while he was being escorted to the law library, Plaintiff attempted to stab an officer in the abdomen with a handmade weapon. (Doc. 121-1 at 5.) Plaintiff was moved to "alternate SMU housing." (*Id.* at 36.) On July 8, 2020, during a pat search, Plaintiff headbutted an officer in the face. (CDSOF ¶ 11, 13.) On August 26, 2020, Plaintiff was moved to segregation housing; no reason for the move is noted. (Doc. 121-1 at 36.) Due to Plaintiff's behavior, including the two assaults on staff on June 26 and July 8, 2020, and the threat he posed to the safety and security of the facility, he was not approved for recreation in F1 between June 26 and September 14, 2020. (DSOF ¶ 17.) Between July 6 and September 14, 2020, Plaintiff had one disciplinary infraction, on September 10, 2020, although the nature of the infraction is unclear. (Doc. 121-1 at 36.)

During his residence in F1, Plaintiff regularly declined recreation. (DSOF at ¶ 22.) Plaintiff's cell was large enough for him to exercise—e.g., perform push-ups, sit-ups, and leg squats; run in place; stretch, etc. (*Id.* at ¶ 23.) During his residence in F1, Plaintiff regularly exercised in his cell. (*Id.*)

### B. Qualified Immunity

Under the doctrine of qualified immunity, state officials are not liable under § 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 78-79 (2017)). A clearly established right is one that is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle*, 566 U.S. at 664 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

"Because the focus is on whether the officer had fair notice that [his] conduct was

unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela*, 584 U.S. at 104 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). At summary judgment, an officer may be denied qualified immunity "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Although there does not need to be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 584 U.S. at 104 (quoting *White*, 580 U.S. at 79). This standard "protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743.

The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Wesby*, 583 U.S. at 66 n.8. But the Supreme Court has assumed, without deciding, that controlling circuit precedent can constitute clearly established law. *See*, *e.g.*, *City and Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 614 (2015); *Carroll v. Carman*, 574 U.S. 13 (2014); *Reichle*, 566 U.S. at 665-66 (concluding that even if controlling circuit authority could be a dispositive source of clearly established law, the Tenth Circuit's cases did not satisfy the "clearly established" standard).

**C.      Discussion**

   **1.      Eighth Amendment Violation**

Defendant Cooper argues at length that he did not violate Plaintiff's constitutional rights. (Doc. 182 at 8-13.) In the September 27, 2024 Order, the Court determined there are genuine disputes of material fact regarding whether Defendant Cooper violated Plaintiff's Eighth Amendment rights with respect to outdoor recreation or exercise. (Doc. 175 at 33-34.) The Court permitted Defendant Cooper to file a renewed Motion for

Summary Judgment "limited to the issue of whether [he is] entitled to qualified immunity." (*Id.* at 81.) The Court will not permit Defendant Cooper to reargue the Court's finding with respect to whether there was a constitutional violation. Accordingly, the Court will proceed directly to the second prong of the qualified immunity analysis.

### 2.     Clearly Established Law

The Court begins its inquiry into whether the constitutional violation was clearly established "by defining the law at issue in a concrete, particularized manner." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). The Supreme Court has repeatedly warned lower courts "not to define clearly established law at a high level of generality," *al-Kidd*, 563 U.S. at 743, but the Ninth Circuit has recognized that "[t]o phrase the 'right allegedly violated' in such detail and in terms so closely paralleling what allegedly happened [] 'would be to allow [the Officials], and future defendants, to define away all potential claims.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000) (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)).

"A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) ("To show a violation of clearly established law, Cortesluna must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful"). In other words, "'[t]he plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.'" *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) (quoting *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991)). Plaintiff is not relieved of this burden because he represents himself. *See*, *e.g.*, *Padilla v. Knickerbocker*, No. 2:20-CV-00066, 2023 WL 6929297, at *4 (D. Nev. Oct. 18, 2023) (granting qualified immunity because a pro se plaintiff failed to cite case law that showed the right was clearly established); *Parker v. Dequito*, No. 20-CV-661, 2022 WL 2106154, at *11 (S.D. Cal. June 10, 2022) (same); *Stacker v. Johnson*, No. 2:16-CV-2913, 2019 WL

4991740, at *5 (E.D. Cal. Oct. 8, 2019) (same); *see also Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) ("A district court lacks the power to act as a party's lawyer, even for pro se litigants."). "There is no analogous burden on § 1983 defendants to find factually on-point cases clearly establishing the lawfulness of an officer's actions. Nor must § 1983 defendants come forward with precedent showing that the *un*lawfulness of their conduct was not clearly established." *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023). By failing to respond to Defendants' Motion, Plaintiff has failed to meet his burden. Notwithstanding Supreme Court and Ninth Circuit precedent requiring plaintiffs to prove the right at issue was clearly established at the time of the violation, the Ninth Circuit has held that Rule 56 of the Federal Rules of Civil Procedure does not permit this Court to grant summary judgment by default. *See*, *e.g.*, *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). Accordingly, the Court must expend its limited public resources to determine, on Plaintiff's behalf, whether the right at issue was clearly established at the relevant time.

"[T]he qualified immunity inquiry is highly context-sensitive, turning on whether it would be clear to a reasonable officer that denying outdoor exercise was unlawful 'in the situation he confronted.'" *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010). Defendant Cooper argues that at the relevant time, "it was clearly established that restricting recreation where an inmate poses a serious threat to staff safety, does **not** violate the Eighth Amendment." (Doc. 182 at 14.) Defendant Cooper relies on *LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993), in support of his argument that Plaintiff's history of assaultive behavior justified the denial of recreation for two months. In *LeMaire*, a prisoner confined in a disciplinary segregation unit was deprived of outside exercise for most of his five-year period of incarceration due to the prisoner's "relentless" assaults on officers and other prisoners. *Id.* at 1149. Specifically, the prisoner had attacked a prison guard, "savagely attacked" another prisoner, assaulted numerous prison officers with hot water, toilet water, food, feces, and urine, had at least 25 major rule violations in a two-year period, and attacked two prison officials as he exited an exercise cubicle (an act "he vowed to repeat"

if he were allowed to exercise again). *Id.* at 1448, 1458. The prisoner claimed the disciplinary removal of his out-of-cell exercise privileges violated the Eighth Amendment. *Id.* at 1457. The Ninth Circuit framed the issue as "whether curtailing [] outdoor exercise privileges" as to a prisoner because he "both abused them and represent[ed] a grave security risk when outside his cell" met the subjective requirements for an Eighth Amendment violation. *Id.* at 1458. The Ninth Circuit held that "as long as [an inmate] engages in violent and disruptive behavior, prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline[.]" *Id.* The Ninth Circuit concluded that there was no Eighth Amendment violation because the plaintiff's loss of outside exercise privileges was "directly linked to his own misconduct, which raise[d] serious and legitimate security concerns within the prison." *Id.*

In *Allen v. Sakai*, 48 F.3d 1082 (9th Cir. 1994), the Ninth Circuit considered an Eighth Amendment claim by a prisoner who alleged that for a six-week period, officials provided him only 45 minutes per week of outdoor exercise. *Id.* at 1086. The prisoner had been transferred to the prison's special holding unit (SHU) "after multiple disciplinary offenses ranging from counterfeiting documents to assault." *Id.* The Ninth Circuit rejected the defendants' analogy to *LeMaire*, noting that unlike the plaintiff in *LeMaire*, the plaintiff in *Allen* "did not lose his exercise privileges based on a determination by prison officials that he presented a 'grave security risk when outside his cell' and that measures were necessary to deter violent behavior separating [the plaintiff] from the rest of the population in SHU." *Id.* at 1088.

In *Thomas v. Ponder*, 611 F.3d 1144 (9th Cir. 2010), the Ninth Circuit again distinguished the facts in *LeMaire* with respect to the prisoner's disciplinary history. In *Thomas*, prison officials denied the plaintiff outdoor exercise for 13 months and 25 days while he was in a maximum-security housing unit. *Id.* at 1146. The officials conditioned the plaintiff's access to outdoor exercise upon his signing a "pledge form" promising that he would not engage in violence while participating in prison programs. *Id.* The plaintiff signed contemporaneous interview forms promising to "program non-violently" but

refused to sign the pledge form itself. *Id.* The only disciplinary infraction during the plaintiff's 13–month–25–day confinement without out-of-cell exercise was a report filed by a prison official charging him with "willfully obstructing a police officer" because he had submitted a complaint to the prison Warden about the officials' refusal to allow him to exercise. *Id.* at 1153.

The district court concluded, in part, that the prison officials' deprivation of the plaintiff's right to exercise was reasonable because of his disciplinary history, and because he had the opportunity to sign the pledge form at any time, and upon signing would have been permitted to exercise out-of-cell. *Id.* at 1146. The Ninth Circuit reversed, concluding that the plaintiff's disciplinary history bore "very little resemblance" to that of the prisoner in *LeMaire*, and *LeMaire* therefore had "little relevance to the present case." *Id.* at 1153. The Ninth Circuit observed that "deprivation of exercise may be reasonable' in certain situations, such as during a 'state of emergency' in a prison, or when a prisoner poses such a threat to inmates or guards that his confinement without exercise is the only way to maintain the security of the facility," but where "the punishment of deprivation of exercise appears clearly not to have been necessary to maintain order in the prison, it is difficult to conceive of how a deprivation of a basic human necessity may be deemed reasonable." *Id.* at 1156.

Here, the seriousness of Plaintiff's disciplinary history fell between that of the plaintiffs in *Allen* and *Thomas* and that of the plaintiff in *LeMaire* but is closer to that of the plaintiff in *LeMaire*. As the Ninth Circuit recognized in *Norwood*, its precedent does not hold that "a prisoner's right to outdoor exercise is absolute and indefeasible, or that it trumps all other considerations." 591 F.3d at 1068. In the two weeks preceding the decision to deny Plaintiff outdoor recreation, Plaintiff had assaulted two staff. Unlike *Allen*, this is not a case where Defendant Cooper relied on "inconsequential logistical concerns" to justify denying outdoor exercise. *See Allen*, 48 F.3d at 1088. Moreover, "when balancing the obligation to provide for inmate and staff safety against the duty to accord inmates the rights and privileges to which they are entitled, prison officials are

afforded 'wide-ranging deference.'" *Norwood*, 591 F.3d at 1069 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). "[A] reasonable officer could have believed that restricting [Plaintiff's] outdoor exercise was consistent with the Eighth Amendment," and "no authority clearly established the contrary." *Id.* at 1070. Defendant Cooper is entitled to qualified immunity with respect to the denial of outdoor recreation based on Plaintiff's history of assaulting prison staff. The Court will grant Defendant Cooper's Motion for Summary Judgment.

**IV.   Defendant Arriola**

In the September 27, 2024 Order, the Court denied summary judgment as to the excessive force claim against Defendant Arriola in Count Four in *Williams #4*. As noted, Defendant Arriola did not file a Renewed Motion for Summary Judgment. Thus, the excessive force claim against Defendant Arriola remains.

**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is **withdrawn** as to Defendant Cooper's Motion for Summary Judgment (Doc. 182).

(2)   Defendant Cooper's Motion for Summary Judgment (Doc. 182) is **granted**.

(3)   Count Four in CV-22-00154 is **dismissed with prejudice**. **There are no remaining claims in CV-22-00154.**

(4)   The Clerk of Court must enter judgment in favor of Defendant Cooper as to CV-22-00154.

(5)   The sole remaining claim is the Eighth Amendment excessive force claim in Count Four against Defendant Arriola in Count Four in *Williams* #4 (CV-22-01163).

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

(6)   This matter is re-referred to United States Magistrate Judge Bruce G. Macdonald for a Settlement Conference.  Defendants will be responsible for setting up a joint conference call with Judge Macdonald's chambers no later than **fourteen (14) days** from the date of this order to schedule a Settlement Conference and for instructions regarding preparation for the conference.

Dated this 24th day of February, 2025.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge